Mr. Carpenter, may I please report Kenneth Carpenter appearing on behalf of Michael Viterna. In this case, your honors, the Veterans Court misinterpreted the provisions of 38 CFR 5904D when it determined that the board had authority to review a fee agreement for purposes of determining whether or not it applies to the claim for which it is being proffered. There is no such language in either 5904 or in 5904. The board's eligibility review is limited to a determination as to whether or not services... In the statute, it says that if there is a fee agreement, this withholding can take place. And the question basically is whether there is a fee agreement. And it doesn't seem to me to be much of a stretch to say there is no fee agreement if the fee agreement doesn't cover the situation. Well, your honor, it's our position that the fee agreement itself does not control. There is no requirement in... Suppose there is a fee agreement with respect to a tell arthritis issue and the lawyer is successful in getting compensation for PTSD. Is there an agreement under those circumstances with respect to PTSD? No, your honor, because the services were not performed after the triggering event. The triggering event in this case was met regardless of what was in the fee agreement. What do you mean the triggering event? What's the difference? Well, your honor, under 5904C in the preceding paragraph, that applies to all fee agreements. 5904D only applies to withholding fee agreements. And under the general... I don't think you're addressing my hypothetical. I'm sorry? If there's an agreement with respect to tell arthritis and the lawyer secures compensation for PTSD, how is it that there's a fee agreement with respect to PTSD? There isn't, your honor, but the only issue... How is that different from this case? Because... There was a fee agreement with respect to NLDs after a particular date and this doesn't fall into that category. That's correct, your honor, but at issue and the representation in this case, there was one issue and one issue alone and that was DIC benefits. And those DIC benefits were not ambiguous. Mrs. Pitts knew what it was she was hiring Mr. Viterna to do and Mr. Viterna, in accordance with the statutory scheme, provided services to her after the triggering event, which was a first final board decision and his representation of her at court. And under those circumstances... 5904D talks about 20% of the total amount of any past due benefits awarded on the basis of the claim. That's correct, your honor. And how is the VA supposed to determine the basis of the claim without looking at what claim is at stake? And here, the agreement doesn't cover the claim filed prior to June 20, 2007. No, your honor, the fee agreement does not. And it's our position that there is no statutory requirement that a fee agreement do so. What is required by the statutory fee agreement is outlined in the regulations and the VA, excuse me, the board found in this case that he met all of the requirements for a valid fee agreement with Mrs. Pitts. And as a consequence, there is no ambiguity here that can be read into the Scrivner's error, which took place by identifying the wrong triggering event. That's all that happened here is that this fee agreement was not the proper fee agreement under the facts of this particular case. I mean, you say this is a Scrivner's error, but it's part of the agreement. It is part of the agreement, your honor, but the question is, is there a review of the fee agreement beyond the scope of 5904D? 5904D is limited to withholding fee agreements. And the predicate for withholding fee agreements is that the fee must be limited to 20%, which this contract provided, and it must be contingent. And as a result, those terms, which is why the board made a favorable finding of fact, that this was a valid fee agreement. What the Veterans Court did and what the board did before it was to go back and review the contents to see if there was some defect because of the indication in there about the erroneously identified triggering event. But if there's a defect, then there's no agreement. I respectfully disagree, your honor. Not under this statutory scheme. This statutory scheme... It seems to me that that wouldn't make any sense at all to say you don't look to see whether there was a valid underlying agreement. You just look to see, okay, was it 20% and was it contingent? That's it. No, your honor. There's also a threshold determination under C-1 as to whether or not there was an appropriate triggering event. Regardless of what's in the fee agreement, were these services performed by Mr. Paterna after the correct triggering event, which is independent of what may or may not have been in the fee agreement? The services performed were performed by Mr. Paterna after he was lawfully able under C-1 to charge and receive a fee. He did so in good faith. He filed this fee agreement in 2013. It does not come to light until after there is an award of past due benefits. That meets all of the qualifications under 5904D. The board, in fact, found that there was a valid fee agreement under 5904D. It didn't say under 5904D. It simply said there was a valid fee agreement. Then it goes underneath that valid fee agreement to look to the content. I'm simply saying that Congress was, in 5904D, creating an incentive to attorneys to represent claimants under these defined terms under D. That's what Mr. Paterna did. He did so after the appropriate triggering event. He is, as a matter of law, entitled to a fee. Unless there's any further questions from the panel. Okay. Thank you, Mr. Carpenter. Mr. Yale. Thank you, Your Honors, and may it please the Court. Our position is that the plain language of the statute, 5904D, covers this particular situation. The language that was seized upon earlier by Judge Lynn, awarded on the basis of the claim. In order to evaluate whether or not the statutory requirements are met, you have to look at the face of the fee agreement, as well as what benefits were awarded, what was the claim, and make sure that that matches up. That's how, in order to comply with that statutory provision. What was the claim here? The specific claim here? Yes. It was an Agent Orange pancreatic cancer claim. Right. So when we look at basis of the claim and that award of benefits, that doesn't have anything to do with timing of when the fee agreement is supposed to kick in. Well, but the fee agreement is describing, it's identifying what claims can be brought. And so certainly the fee agreement. But if you want to, the basis of the claim, I mean, the word claim and basis of the claim, that has some clear understanding in Veterans Benefits Law. And, you know, I'd be a little reluctant to twist the meaning of the word claim  Well, respectfully, we haven't brought up the triggering event, that particular language here. I mean, I think that's sort of a separate issue as to whether or not anyone is, any veteran is actually eligible for payment. I guess what I'm trying to understand is why is it that you point to the phrase on the basis of the claim in the statute as, you know, a means to start looking into the fee agreement and examining the fee agreement? Well, we point to that language because we think when read in conjunction with the entirety of 5904D, including the is to be paid language, here under the agreement, it's not to be. It's simple. And why do you just argue there's no agreement? If the agreement doesn't cover this, there's no agreement. Well, we don't. Why is it more complicated than that? Well, we don't disagree with that premise either. I think we would phrase it as whatever agreement there is does not cover this particular claim because the way that this agreement was written, it's covering, you know, after an NOD is fired after a certain date. So could something down the road be covered by that particular agreement? It could. This is not, though. This particular claim is not. And so, you know, I think that's the distinction here that we are trying to make. But we certainly think that VA has to have the authority to look and see whether or not there's a matchup of the basis on which benefits were awarded and what's spelled out in the agreement on the face of that particular agreement. And in our briefing, we address the situation where there could be a rating decision that benefits are awarded on seven different claims, essentially. So what about we had a case, Cox, I think, which was, I don't know, maybe last month involving the question of whether the board could look to the board to see whether the agreement was violated or not. So if I understand from that case, you're also suggesting that the board has the authority to determine whether there was a violation of the agreement, so there shouldn't be payment under the agreement, correct? Well, I think that there's nothing that we've seen that necessarily prevents that. Cox was reasonable. That's the government's position, right? Not only can you determine whether or not there was an agreement, you can also determine whether the agreement was violated, right? Well, on the face of the agreement, but I think what in this case we're pointing to is a much more narrow analysis, which is matching up the claim, the benefits awarded in that particular claim, what it is with what's identified as the claim in the fee agreement. In this case, the notice of disagreement on the claim was filed prior to June 20, 2007. Is that right? Correct. That's undisputed. And so this particular agreement does not apply to the benefits, just on the face of the document. The disagreement does not apply to the claim. Correct. Exactly. And that's the position we have. You know, with respect to Cox, Cox I think was more of a reasonableness determination case. I think there actually was a reasonableness analysis. I don't want to sort of re- No, that's what the government was arguing, that there was no entitlement to the fee because the agreement was violated. Right, and I think there was a good cause provision in there and whatnot. I don't want to sort of re-litigate that recent case. How often do these issues come up about the board's authority to enforce fee agreements or to look at the fee agreements? You know, I'm not sure I have a specific answer. I mean, my understanding is that there have been a lot, there's been a lot more motion practice, for example, at the VA with respect to reasonableness, for example, or with respect to the eligibility issues. You know, I'm not aware of a lot of cases about that. I do know that there's been a lot more, at least recently, you know,  counsel with respect to the reasonableness of the fee and vice versa with respect to the general counsel looking into that. It's gone up. I can't give you specific numbers, but I think this is slightly different. This is more eligibility for the fee, whether or not, you know, sort of you can get entitlement to the fee. And so I don't think I'm really aware of, at least recently, other such cases. But obviously Cox was a relatively recent case on the subject. Okay. Anything further? There's nothing further from Your Honor, as we ask that you affirm the decision of the Veterans Court. Okay, thank you. Mr. Carpenter? May it please the Court? The fee agreement in this case is in Appendix 61, and it refers to the claim only in the broadest possible terms. The question here is whether or not this fee agreement can be valid at the same time in which it is not a fee agreement. This is a fee agreement that covered services performed after the statutory triggering event was met. He included in his fee agreement the wrong triggering event. The Board could not have made the determination that this was a valid fee agreement if there was not a valid triggering event. And there was, because this representation took place after a first final decision, which was the original criteria for the authorization to lawfully charge a fee, and it was representation at court. On both of those bases, he had a valid basis to lawfully charge a fee. What was before the Board, and then before the Veterans Court, was whether or not under 5904D he had a valid fee agreement for withholding purposes. But if you were to lose this case, that doesn't mean that your client wouldn't have a remedy to sue under state law, right? Or there was an implicit agreement to have him perform these services, you just couldn't get withholding. You could sue under state law, right? Well, Your Honor, unfortunately Mrs. Pitts has passed away, so in this case that's not an available option. But in any event, I do not believe that would be the case, because the defense would be that there was a determination by the VA that he was not entitled to a fee. No, he was only not entitled to a fee under the written agreement. But there was potentially a separate oral agreement. I understand that, Your Honor. But it was not the intention of Congress, particularly in 5904D, that attorneys or agents would have to go to civil court to collect their fees. The entire purpose of 5904D is uniquely formed by Congress to withhold fees from the award of past due benefits and have them directly paid. Well, there's no intention that if there was only an oral agreement that there would be withholding, right? Because the statute specifically requires it. No, a fee agreement is required. The problem here, Your Honor, is that it's simply unfair to require the attorney to file a fee agreement, which he did in 2013, and then wait five, six years later in order to say, well, your fee agreement isn't compliant. If the secretary is going to review these fee agreements, then the secretary ought to be obligated to review the fee agreements and spot these technical errors, which easily could have been corrected in 2013, 2014, or 2015. So the VA needs to be clairvoyant then? No, Your Honor. The front end and review every fee agreement and imagine to themselves, oh, this couldn't possibly be what the lawyer really wanted to agree to? No, Your Honor. Congress required that fee agreements be filed with the agency. This fee agreement was filed with the agency in 2013, and yet that filing there was no action taken to review that fee agreement to determine whether or not it was or was not compliant. I know. And you appear to be asking or demanding that the VA actually conduct such a review. But that's what they ultimately do. To figure out whether the lawyer's interests are appropriately protected by the agreement. You're asking for a reformation, right? No, I'm not. I'm asking for a determination that there was an error as to the identifiable triggering event. There was no qualifying NOD in this case. Therefore, the agreement would be presumably invalid on its face in terms of just looking at the four corners of that fee agreement. Then the fee agreement's invalid? No, it can't be invalid. The board found it was valid. And that's simply our point, Your Honor, that you can't have the disconnect of the finding of a valid fee agreement and then turn around and take that validity away based upon a ground that isn't in the statute. What is in the statute in C-1 is that the triggering event determines whether or not in either a withholding or a non-withholding fee agreement whether or not there is a lawful right to charge and receive a fee. Thank you very much, Your Honor. Thank you. Thank both counsel. The case is submitted.